IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:08CV458-03-MU

DOUGLAS WADE MELTON,       )
                           )
    Plaintiff,             )
                           )
    v.                     )           **O R D E R**
                           )
SHERRI SIMMONS et.al.,     )
                           )
    Defendants.            )
_____)

**THIS MATTER** comes before the Court on Plaintiffs' Complaint under 42 U.S.C. § 1983, filed September 25, 2008 (Document No. 1 ); Plaintiff's Amended Complaint filed October 8, 2008 (Doc. No. 5); Plaintiff's Motion for Summary Judgment filed December 11, 2008 (Doc. No. 20); Defendant's Motion for Summary Judgment filed November 19, 2009 (Doc. Nos. 44 and 45); Plaintiff's Response filed December 7, 2009 (Doc. Nos. 47 and 48); and Defendant's Reply filed December 14, 2009 (Doc. No. 49).

**FACTS**[1]

In his Complaint, Plaintiff alleges that Defendants Sherri Simmons, Rutherford County Jail lieutenant, and Nurse Warren Parton denied his special orthopedic footware while an inmate in the Rutherford County jail during the periods May 17 through November 25, 2007 and March 29 through May 19, 2008. Plaintiff also contends that Defendant Simmons denied him telephone access and exercise during administrative lockdown the last four weeks of his 2007 stay.

---

[1] The facts have been taken, in large part, from Defendant's Motion for Summary Judgment as well as Plaintiff's deposition transcript.

1

Plaintiff's asserted need for orthopedic footware stems from a gunshot wound to his right calf that he sustained on October 13, 2003. (Plaintiff's deposition, 15:15-23.) The injury left Plaintiff with pain and discomfort unless he is wearing orthopedic shoes. (Pl's depo. 27:21-28:7.) Plaintiff can still stand and walk, but "not as good" as he used to. (Pl's depo., 26:22-27:4.) A foam arch support inserted into the right shoe provides additional comfort. (Pl's depo., 30:1-31:5.)

Plaintiff was initially treated at Carolinas Medical Center. Upon his release from the hospital, Plaintiff performed his own wound care for the most part, and with the exception of a "hematoma" in December 2003 or January 2004, he kept the wound site infection free. (Pl's depo., 21:19 - 24:6.) Although he initially received some assistance from a home health care agency, the last time he saw an outside doctor concerning the gunshot wound was March 17, 2004 when he was taken there by the Rutherford County Sheriff's Office (Pl's depo., 42:8 - 46:5.)[2]

Plaintiff was incarcerated in state prison from May 2004 until June 1, 2005. It was during this incarceration that Plaintiff began wearing an orthopedic "insert" in his shoes (Pl's depo., 51:2-6.) During his next stay in the Rutherford County jail from August 2, 2005 through October 5, 2005, Plaintiff never requested jail staff provide him with orthopedic shoes, as he did not yet have a doctor's "order" to that effect (Pl's depo., 54:5 - 55:15.) It was not until Plaintiff was back in Department of Corrections ("DOC") custody that he obtained such an order, and even then he had to wait over two months for the physician's recommendation to be approved by a separate board (Pl's depo., 81:23 - 83:14.)

Plaintiff was next in Rutherford County jail from May 17, 2007 until November 25, 2007

---

[2] Plaintiff estimates that he has been incarcerated at the Rutherford County jail between ten and twenty times since age 15. (Pl's depo., 36:18 - 37:2.)

(Pl's depo., 58:10 - 15.) This is the first period of time mentioned in Plaintiff's Complaint. During intake on May 17, 2007, Plaintiff told a jailor that he wanted to wear the orthopedic shoes he had on at the time of his arrest. (Pl's depo., 58:16 - 59:23.) These were the same pair of "Dr. 2 shoes" he had received while in DOC custody. (Pl's depo., 81:16 - 22.) The jailor told Plaintiff he would have to direct the request to Defendant Simmons, the jail's lieutenant. (Pl's depo., 58:16 - 60:20.) When Plaintiff approached Simmons a day or so later and asked her to swap his jail issued "flip-flops" for his orthopedic shoes, she told him he would have to direct his request to the jail's medical staff.[3] (Pl's depo., 61:24 - 62:25; Declaration of Sherri Simmons ¶ 3.) Ms. Simmons states that she had no authority to approve or disapprove medical requests. (Simmons Decl., ¶ 2.)

After speaking to Simmons, Plaintiff contacted an unidentified male nurse who told him to fill out a sick call form. Plaintiff did so, but heard nothing back, so he submitted a second form about two weeks later. (Pl's depo., 64:12 - 67:18.) Medical staff did not respond, and he speculates they were trying to ignore him. (Pl's depo., 69:18 - 23.) However, he can think of no reason or explanation as to why this would be so. (Pl's depo., 69:8-17.)

Plaintiff submitted a third sick call form on July 3, 2007. Among the various physical complaints he listed was "right foot deformity due to bone damage." (Pl's depo., 71:7-20.) What he meant by "deformity" was impaired right ankle movement and associated "hammer toes," i.e., the toes wee pointed down instead of up. (Pl's depo., 71: 16-25.) The sick call form did not, however, mention anything about the supposed need for orthopedic footware. (Pl's depo, 88:12 - 17.) Defendant Parton examined Plaintiff later that same day and ordered blood glucose level testing

---

[3] Plainitff admits that he made Simmons a defendant to this lawsuit only because he was unsure as to whether issuance of orthopedic shoes would have ultimately required her approval. (Pl's depo., 83:21 - 85:10.)

3

and certain vitamins, but did nothing about Plaintiff's right foot beyond ordering pain medication. (Pl's depo., 72:23 - 73:22; 88:18 - 89:24; 90:5 -13.)

Unsatisfied, Plaintiff submitted another sick call form the next day with a grievance complaining not enough was being done. (Pl's depo., 75:4 - 76:9.) The grievance complained about being denied orthopedic shoes as well as being given insufficient pain medication and insufficient vitamins and medication for a liver problem and suspected diabetic condition. (Pl's depo., 76:10 - 77:14.) Plaintiff acknowledges that the only written recommendation for the orthopedic shoes was the 2005 medical chart entry by a DOC physician, which is not something the Rutherford County jail would have had. (Pl's depo., 85:17 - 86:13; 87:20-25; Parton Decl., ¶ 3.)

Defendant Parton referred Plaintiff to Dr. Piland, the jail's physician. (Pl's depo., 89:25-90:4.) Plaintiff was examined by Dr. Piland one week later on July 11, 2007 at which time Plaintiff discussed several medical issues, including the orthopedic shoes he had received while in DOC custody. (Pl's depo., 91:3 - 92:23.) While Dr. Piland noted "trauma, toes right" on Plaintiff's chart (Pl's depo., 92:3-4), he did not recommend that Plaintiff wear orthopedic shoes. Indeed, Dr. Piland explained that not all hammer toe conditions require orthopedic shoes, and that in Plaintiff's case he "did not believe the wearing of special orthopedic footware was medically necessary." (Declaration of Dr. Piland ¶ 2.)

Plaintiff remained in the Rutherford County jail until his release to a drug rehabilitation center on November 25, 2007. (Pl's depo., 93:24 - 94:5.) He spent the last four weeks of his time in custody in administrative lockdown because of fighting. (Pl's depo., 109:4 - 111:20.)[4] Although the Amended Complaint alleges that Plaintiff was denied use of the telephone during this time,

---

[4] This was a single man cell with a shower. (Pl's depo., 111:21 - 112:2.)

4

Plaintiff admits writing a note to Lt. Simmons thanking her for letting him use the phone to call his family and to make arrangements for new clothing prior to his release. (Pl's depo., 112:3 - 24.; Simmons Decl., ¶ 5.) Additionally, although the Complaint also alleges a denial of adequate exercise, Plaintiff admits the only "exercise" he missed out on was stretching in the day room while talking with other inmates. As described by Plaintiff, this kind of "exercise" was simply to facilitate "freedom of the mind." (Pl's depo., 112:25 - 113:12.) Plaintiff admits the lack of this "exercise" caused him no physical injury. (Pl's depo. 113: 13-16.)

Plaintiff was next readmitted to the Rutherford County jail on March 29, 2008. (Pl's depo., 96:17 - 97:5.) He was barefoot when arrested, and upon intake was issued the standard jail flip-flops. (Pl. Depo., 101:4 - 102:6.) When Plaintiff asked about receiving orthopedic shoes, he was told by the intake jailor to fill out a medical request. (Pl's depo., 102:7 - 103:15.) Plaintiff claims that during his seven weeks in the jail he submitted three medical requests that went unanswered, which caused him to start filing written grievances. (Pl's depo., 103:16 - 104:5.) The first grievance Plaintiff recalls was on May 9, 2008 complaining about the lack of response to a medical request submitted the day before. (Pl's depo., 105:21 - 107:2.) Although the grievance was directed to Lt. Simmons, Plaintiff does not know if she ever saw it. (Pl's depo., 104:18 - 105:8.)

Plaintiff remained in Rutherford County jail until he was transferred to DOC on May 19, 2008 to begin serving his sentence.[5] (Pl's depo., 6:15-18 and 98:15-25.) Before leaving for DOC, Plaintiff submitted two more medical requests and one additional grievance seeking Dr. 2 shoes.

---

[5] It took Plaintiff about seven month to get new orthopedic shoes from the DOC following his return to prison. The Court takes judicial notice of the fact that Plaintiff is suing the DOC in the Eastern District of North Carolina for the delayed receipt of these shoes. See Case No. 5:09-CT-03024-D (E.D.N.C.).

(Pl's depo., 113:24 - 114:12.) He also claims to have made a verbal request to Defendant Parton as he walked by his cell, but Parton allegedly ignore him. (Pl's depo., 114:13 - 115:3.) Defendant Parton contends that he does not recall the alleged encounter, but stated that he would still have deferred to Dr. Piland's judgment on whether special orthopedic shoes were medically necessary. (Parton Decl., ¶ 4.)

Plaintiff contends that the lack of orthopedic shoes during his 2007 and 2008 stays in the Rutherford county jail caused "blood blisters" on his right toes and pain in the right foot, knees and back. (Pl's depo., 118:11 - 119:17.) However, Plaintiff also admits that he still developed blood blisters even after receiving the replacement pair of Dr. 2 shoes from the DOC. (Pl's depo., 120:1-5.)

## LEGAL STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). This standard, by its very terms, provides that the mere existence of some alleged factual dispute between the parties will not defeat a properly supported summary judgment motion; rather the rule requires that there be no genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). A genuine issue exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248. "Only disputes over the facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. Moreover, the moving party has the initial responsibility of informing the district court of the basis for its motion,

and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes will demonstrate the absence of any genuine issue of material fact." Celotex Corp. v. Cateret, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P.56(c).

**ANALYSIS**

**A. Deliberate Indifference**

Plaintiff was a pretrial detainee at the time he filed this case. A pretrial detainee makes out a due process violation only if he establishes a defendant's deliberate indifference to serious medical needs as defined for Eighth Amendment violations. Martin v. Gentile, 849 F.2d 863, 871 (4th Cir. 1988).[6] An Eighth Amendment violation occurs only if the medical need is serious. Johnson v. Quinones, 145 F.3d 164, 167 (4th Cir. 1998). "A serious medical need is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Creech v. Nguyen, 153 F.3d 719 (4th Cir. 1998). Prison officials cannot be held liable under the Eighth Amendment unless they knew of and disregarded an excessive risk to an inmates health or safety. Farmer v. Brennan, 511 U.S. 825, 834 (1994). Deliberate indifference may be demonstrated by either actual intent or reckless disregard. Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). A defendant acts recklessly by disregarding a substantial risk of danger that is either known to him or which would be apparent to a reasonable person in his position. See Miltier, 896 F.2d at 852-53. However, a plaintiff must prove that defendant was aware of facts showing a substantial risk of harm and also drew the inference that a

---

[6] The contours of the Due process Clause in this context tend to be coextensive with the substantive constitutional principles applied via the Eighth Amendment to convicted inmates. Hill v. Nicodemus, 979 F.2d 987, 991-92 (4th Cir. 1992).

7

substantial risk of harm existed. See Johnson v. Quinones, 145 F.3d 164, 167-68 (4th Cir. 1998). Disagreements over the quality and extent of medical care do not state a claim for relief for deliberate indifference. Estell, 492 U.S. 97 (1976). Following Estelle, the Fourth Circuit expressly held that "[d]isagreements between an inmate and a physician over the inmates's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged." Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1984). To be actionable, an inmate's treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). Additionally, simple negligence is not a constitutional deprivation. Daniels v. Williams, 474 U.S. 327 (1986); Estelle v. Gamble, 429 U.S. 97, 105-106 (1976).

**1. Defendant Simmons**

Plaintiff admits that he made Defendant Simmons a defendant only because he was unsure if issuance of orthopedic shoes would have ultimately required her approval. (Pl. Depo., 83:21 - 85:10.) In his opposition to the Defendant's Motion for Summary Judgment, Plaintiff argues that Defendant Simmons should have used "her power and authority" to get him the shoes. (Opposition at 7.) However Plaintiff's argument overlooks Defendant's unequivocal testimony that she lacked such authority. Indeed, Defendant Simmons explained in her Declaration that she had no approval authority in this regard which is why she referred Plaintiff to medical staff for a decision regarding his orthopedic footware. (Simmons Decl., ¶ 2.)

Applying the above law to Plaintiff's allegations it is clear that Plaintiff has not stated a claim for relief as to either defendant. Indeed, the record is clear with respect to Lt. Simmons that when Plaintiff asked her about wearing his orthopedic shoes, she informed him that his request needed to

8

be approved by the medical staff. A jail official's "failure to take further action once he had referred the matter to the medical providers can[not] be viewed as deliberate indifference." Greeno v. Daley, 414 F.3d 645, 655-56 (7th Cir. 2005).

### 2. Defendant Parton

With respect to Defendant Parton, the evidence reveals that Plaintiff met Defendant Parton for the first time on July 3, 2007 after he submitted a sick call request listing a variety of physical complaints, only one of which mentioned his foot, i.e., a "right foot deformity due to bone damage." (Pl's depo., 71:7 -20.) Significantly, the sick call request said nothing about a need for orthopedic footware. (Pl's depo., 88, 12-17) and Defendant Parton does not recall Plaintiff even mentioning orthopedic footware. (Parton Decl. ¶ 3.) Indeed, Parton recalls Plaintiff's main concern was that he was not receiving enough food and calories, and that he wanted to be tested for diabetes. Nevertheless, Defendant Parton ultimately referred Plaintiff to Dr. Piland to review his status based on Plaintiff's request for a "lifetime supply" of vitamins due to an alleged liver disease.[7]

Plaintiff was examined by Dr. Piland one week later at which time he specifically assessed the hammer toes "deformity" of which Plaintiff complained. Plaintiff contends that Dr. Piland never looked at his toes (Plaintiff's Opposition at 5), but simply wrote down "trauma, toes right" on Plaintiff's chart. However, Plaintiff has submitted Dr. Piland's chart as an exhibit and it shows that Dr. Piland did write down "hammer toes right," which corroborates Dr. Piland's declaration to that effect and his conclusion that orthopedic footware was not "medically necessary" and therefore none

---

[7] Defendant Parton did authorize enough vitamins for one week and also authorized one week of ibuprofen based on Plaintiff's complaint of back and/or leg pain. (Parton Decl., ¶ 2.)

9

was authorized. (Piland Decl., ¶ 2.)[8]

The evidence establishes that Defendant Nurse Parton referred Plaintiff to Dr. Piland after examining Plaintiff on July 3, 2007. His sick call request included, among other things, a complaint that of "right foot deformity due to bone damage." (Pl's depo., 71: 7-20.) Regardless of Dr. Piland's ultimate decision, Defendant Parton's act of referring Plaintiff to Dr Piland for assessment discharged Parton's duty of care under the Fourteenth Amendment. See, Marquez v. Quarterman, 2009 WL 2485535 *4 (E.D. Texas 2009) (dental hygienist not deliberately indifferent to inmate's request for dentures since she referred him to a dentist for further screening). It is inconsequential that Plaintiff again asked Parton for orthopedic shoes during his next stay in jail, as Parton was not competent or authorized to make the decision, and could not reasonably be expected to accommodate Plaintiff when the physician in charge had already rejected the same request. See Chacon v. Ofogh, 2008 WL 4146142 *5 (W.D. Va 2008) (taking "judicial notice of the fact that nurses generally cannot prescribe treatment or overrule a doctor's orders").

Finally, Plaintiff argues that Nurse Parton should have retrieved his medical records from the Department of Corrections. (Plaintiff's Opposition at 14.) Those records would have established his need for the orthopedic footware. However, Nurse Parton cannot be faulted for not trying to retrieve Plaintiff's DOC medical records without a request to that effect from Dr. Piland. See Banks v. Jordon, 2008 WL 4371491 *13 (E.D.Mo. 2008) ("any request by Plaintiff to Defendant [jail nurse] to obtain outside providers' medical records regarding Plaintiff's glaucoma before Jail doctor

---

[8] Moreover, the Court notes that Plaintiff did not name Dr.Piland as a defendant in this case. However, even if he did, the Court notes that the fact that Plaintiff disagrees with Dr. Piland assessment is inconsequential as "[d]isagreements between an inmate and a physician over the inmate's proper medical case do not state a § 1983 claim unless exceptional circumstances are alleged." Wright v. Colllins, 766 F.2d 841, 849 (4th Cir. 1985).

ordered such records [] does not create a genuine issue of material fact on Plaintiff's constitutional claim of Nurse Defendants' deliberate indifference in the treatment of his glaucoma".)

The evidence is clear that Defendant Parton referred Plaintiff to Dr. Piland, a more qualified medical professional. Such action on his part cannot be considered to be evidence of deliberate indifference. Therefore, Plaintiff's claim against Defendant Parton fails as a matter of law.

**B. Denial of Telephone Access**

In his Amended Complaint, Plaintiff alleged that he was denied the use of the telephone during his time in administrative lockdown. However, during his deposition testimony, Plaintiff admitted that he wrote Defendant Simmons a note thanking her for letting him use the phone to call his family to make arrangements for new clothing prior to his release. (Pl's depo., 112:3-24; Simmons Decl., ¶ 5.) While this admission makes this claim factually frivolous, the claim's legal insufficiency is apparent as well, as inmates simply have no clearly established constitutional right to telephone access. See U.S. v. Footman, 215 F.3d 145, 155 (1st Cir. 2000) (recognizing that inmates "have no per se constitutional right to use a telephone"); Coil v. Peterkin, 2009 WL 3247848 *10 (M.D.N.C. 2009) ("Since inmates do not have a constitutional right to telephone access, Defendant's denial of telephone access to Plaintiff is not a ground upon which Plaintiff can be granted relief." Therefore, Plaintiff's claim that he was denied the use of the telephone while in administrative lockdown fails to state a claim for relief.

**C. Denial of Recreation**

Finally, Plaintiff claims that he was denied recreation while in administrative lockdown. During his deposition testimony, Plaintiff clarified this claim explaining that while in administrative lockdown, he missed out on stretching in the day room while talking to other inmates. Plaintiff

explained that this kind of "exercise" simply facilitates "freedom of the mind" and he suffered no physical injury from its deprivation.(Pl's depo. 112:25 -113:16.)[9] That being so, his claim is without substance, as the PLRA expressly requires the presence of physical injury before an inmate can recover for emotional distress. See 42 U.S.C. § 19973(e) ("No federal civil action may be brought by a prisoner confined in a jail, prison or other correctional facility for mental or emotional injury suffered while in custody without a prior showing of physical injury.") See also Murray v. Edwards County Sherif's Dept., 453 F.Supp.2d 1280, 1292-93 (D. Kan. 2006) (denial of outdoor exercise not actionable where inmate "failed to demonstrate the existence of any physical deterioration" as a result).

**NOW, THEREFORE, IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (Doc. No. 44) is granted; Plaintiff's Motion for Summary Judgment (Doc. No. 20) is denied and Plaintiffs' Complaint is Denied and Dismissed for failure to state a claim for relief.

**SO ORDERED**.

Signed: January 13, 2010

Graham C. Mullen
United States District Judge

---

[9] It seems Plaintiff was really complaining about not having anyone to talk to more than anything else as the evidence indicates that Plaintiff's six feet by twelve feet cell was certainly large enough to accommodate him stretching so as to stay physically active. (Simmons Declaration ¶ 4.) Moreover, while an inmate in administrative segregation is not permitted to mingle with the general population, he is allowed outside his cell and would have had access to the dayroom during a time when the general population is in their cell, if he had so requested. (Simmons Decl. ¶ 4.) There is no evidence that Plaintiff made such a request.